IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAT HARKER, and ) | |
| JERROD HART, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No.  13-CV-740-TCK-TLW |
| ) | |
| CITY OF TULSA, and ) | |
| FRATERNAL ORDER OF POLICE, ) | |
| LODGE NO. 93, ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is the City of Tulsa's Motion to Dismiss and Alternative Motion for Judgment (Doc. 6), filed November 27, 2103, wherein the City of Tulsa ("City") seeks dismissal of both claims asserted against it by Plaintiffs.  Also before the Court is Plaintiffs' Motion for Restraining Order ("Motion for Restraining Order") (Doc. 15), filed February 24, 2014, wherein Plaintiffs seek to enjoin the City from offering a promotion examination on April 9, 2014.  For reasons explained below, the City is entitled to dismissal of all claims against it.  Based on the City's dismissal from the litigation, the Motion for Restraining Order seeking to enjoin the City's conduct is denied.

**I.     Factual Background**

Plaintiffs Pat Harker ("Harker") and Jerrod Hart ("Hart") are corporals with the Tulsa Police Department ("TPD") who allege that the City's failure to promote them to the rank of sergeant in October 2012 was unlawful.  The City of Tulsa ("City") is an Oklahoma municipality that employs TPD officers and oversees the promotional process for TPD.  Under Oklahoma law, "police officers in any municipality shall have the separate right to bargain collectively with their municipality and to be represented by a bargaining agent in such collective bargaining with respect to wages, salaries,

hours, rates of pay, grievances, working conditions and all other terms and conditions of employment." Okla. Stat. tit. 11, § 51-103. The Fraternal Order of Police, Lodge No. 93 ("FOP") is the collective bargaining agent for TPD officers. The City and the FOP enter into an annual contract called the collective bargaining agreement ("CBA"). Under the CBA, the FOP serves as TPD officers' "exclusive employee representative," and the City and the FOP "are the only parties which may legally and appropriately confer, negotiate, and enter into agreements" relating to TPD officers' conditions of employment. (CBA, Ex. C to City's Mot. to Dismiss, at § 1.3.) The City and the FOP also enter into "memorandums of understanding" that address specific issues on an as-needed basis.

The CBA does not expressly address the promotion process within the TPD. Instead, such process is governed by a City document entitled "Personnel Policies and Procedures" ("City Personnel Policies"). With respect to promotion examination schedules and eligibility-cutoff dates, the City Personnel Policies provide: "*Unless the City and the [FOP] agree to a different schedule*, a promotional examination for the rank of Sergeant shall be given during the month of April every year . . . ." (City Personnel Policies, Ex. E. to City's Mot. to Dismiss, at § 119.31 (emphasis added).) Section 119.5 of the City Personnel Policies, which governs eligibility lists, provides:

> .5 Eligibility Lists for Police Promotional Examinations
>
> .51 Upon the completion of promotional examinations for the ranks of Corporal and Sergeant, lists of candidates eligible for promotion shall be prepared by the Human Resources Department. *The list shall be compiled in rank order of finish and shall be expended in order.* Candidates who score less than 60% on the overall composite score will not be placed on the eligibility list. *The eligibility list for Sergeant shall expire on April 1 of the year following the official posting of the list by the Chief of Police.* The eligibility list for Corporal shall expire on October 1 of the year following the official posting of the list by the Chief of Police. Any decision to reject a candidate is subject to review using the grievance procedure outlined in Section 416 of this manual.

2

> .52 Candidates on the eligibility list for Corporal and Sergeant shall be recommended by the Police Chief for promotion based on rank order of finish.
> .521 Any vacancy occurring up to, and on the expiration date of the eligibility list, shall be filled from the current eligibility list. Only vacancies occurring after the list expires shall be filled from a new eligibility list.

(*Id.* §§ 119.51, 119.52, 119.521 (emphasis added).)[1]

In 2010, the FOP and the City entered into a Memorandum of Understanding agreeing that the normal promotional process would be suspended because of the City's budgetary constraints and the creation of a new promotional process. In 2011, the City and the FOP agreed to a round of promotional testing for sergeants. This resulted in a sergeant's eligibility list, which was announced on April 13, 2011 (the "2011 List"). This Memorandum of Understanding provided that the 2011 List would be in effect for one year following its announcement date, or until April 12, 2012. The 2011 List consisted of thirty individuals. Fourteen vacancies then existed for sergeant positions, and all such positions were filled using the 2011 List. Plaintiffs did not take the sergeant's examination in 2011 and were not on the 2011 List.

In 2012, the City and the FOP again entered into further negotiations regarding the promotional testing process. As part of such negotiations, the FOP and the City agreed to conduct promotional testing outside the typical time frame. In July 2012, the City began a round of promotional testing for corporal, major, and sergeant positions. On October 8, 2012, Plaintiffs

---

[1] Unless modified or changed by a specific term of the CBA, the City Personnel Policies are deemed part of the CBA. *See* Okla. Stat. tit. 11, § 51-111 (providing that departmental policies in effect on date of CBA are deemed part of said agreement unless modified or changed by a specific term of the CBA). Because the CBA is silent as to the testing procedures addressed in the City Personnel Policies, the above-quoted portions of Section 119 of the City Personnel Policies are the contractual terms of employment governing testing procedures.

3

completed their sergeant's exams. On October 17, 2012, the FOP held a meeting of its membership, where a proposed agreement was read regarding the filling of vacancies.[2]

The day following the meeting, on October 18, 2012, the City and the FOP entered into a Memorandum of Understanding ("2012 Memorandum"), which addressed how vacancies would be filled. The 2012 Memorandum provides in its entirety:

### MEMORANDUM OF UNDERSTANDING BETWEEN THE CITY OF TULSA, EMPLOYER AND F.O.P. LODGE #93, BARGAINING UNIT

> **Whereas**, promotional testing for sworn positions within the Tulsa Police Department has been suspended due to budgetary shortfalls as well as the desire of the City of Tulsa and the Fraternal Order of Police Lodge 93 (collectively "parties") to revise the City of Tulsa Police Department promotion policies; and
>
> **Whereas**, the revisions and subsequent validation of the promotional examination policies has been completed and the assessments for the ranks of Corporal, Sergeant, Captain, and Major *are being scheduled and will result in the assessment for the rank of Corporal, Sergeant, Captain and Major being conducted outside of the time frame established in Section 119.3 of the Personnel Policies and Procedures*; and
>
> **Whereas**, *the previous eligibility lists for the ranks referenced above have expired, and currently, vacancies exist within these ranks*;
>
> **Whereas**, the Personnel Policies and Procedure Section 119.5.532 provides for "all Captain and above examinations, an eligibility list must be posted by the Chief of Police or his designee no later than thirty (30) days after the assessment center is completed," the parties acknowledge that due to an unforeseen circumstance, the Performance Measurement (Oral Resume) component of the promotional process has been postponed which will result in a delay in the posting of the eligibility list; and

---

[2] As explained in more detail below, it is disputed whether the FOP's membership approved the proposed agreement during this meeting.

**Whereas**, *the parties acknowledge that the last promotion eligibility list for the rank of Sergeant expired April 12, 2012 with Officers M. Wightman, B. Blair, M. Helton, M. Griffin, and T. Taylor occupying the top five positions respectively.*

**Therefore Be It Resolved**, the parties agree that the City will schedule promotional examinations for the promotions to the ranks of Corporal, Sergeant, Captain, and Major, as soon as practicable with the stipulations as follows:

1. **Corporal, Captain and Major**. All current vacancies occurring in these ranks shall be filled from the promotional lists for each rank that will be created in 2012. *The promotional date for any vacancy that occurred on or before January 1, 2012 shall be retroactive to January 1, 2012.* The promotional date for any vacancy occurring after January 1, 2012 shall be the date of the actual vacancy.

2. **Sergeant**.
    a. *The five vacancies in this rank that existed as of 11:59 p.m. April 12, 2012 and [sic]shall be filled from the last promotional eligibility list that expired April 12, 2012*;

    I. These vacancies will be filled using the top five candidates (or the next eligible candidate on the list, if a candidate(s) is ineligible or does not promote for any other reason), as identified in the April 12, 2012 expired Sergeant's promotional eligibility list;

    ii. *The promotional date for any of the five vacancies that occurred before January 1, 2012, shall be January 1, 2012;*

    iii. The promotional date for any of the five vacancies occurring between January 1, 2012 and April 12, 2012 shall be the actual date of the vacancy, with one exception. Exception: Marcus Harper filled a pre-January 1, 2012 vacancy on April 1, 2012. His promotional date is retroactively adjusted to January 1, 2012 with corresponding adjustments in pay, seniority and time in service;

    b. All vacancies occurring on or after April 13, 2012 shall be filled from the promotional list that will be created in

>>2012. The promotional date to fill vacancies occurring on or after April 13, 2012 shall be the date of the actual vacancy.
>
>**Be It Further Resolved**, while the retroactive promotion dates shall be used for seniority, time in rank, and back pay purposes, the date the employee assumes the actual physical responsibilities of his/her new position shall be used for determination of the promotional probationary period;
>
>**Be It Further Resolved**, the eligibility cutoff for the Corporal, Sergeant, Captain and Major examinations for purposes of determining time in grade and level of education, if applicable, shall be the first of the month in which the respective written examination is given;
>
>**Be It Further Resolved**, *the examination schedule set out within Policy and Procedure Section 119.3 will resume during the 2013 calendar year and the eligibility list for the rank of Sergeant will expire at 11:59 p.m. on March 31, 2013.* The lists for other ranks shall expire according to the provisions of Policy and Procedure governing promotions;
>
>**Be It Further Resolved**, the eligibility lists will be posted by the Chief of Police or his designee no later than thirty (30) days after completion of the Oral Resume component which will be considered part of the assessment center under Policy and Procedure Section 119.5.532;
>
>**Be It Further Resolved**, this agreement as set forth with the provisions listed above is entered into by the parties in good faith and shall be considered as a one time, non-precedent setting agreement. If there are any disputes arising over the interpretation or application of the terms of this agreement they shall be resolved according to the grievance and arbitration procedures of the applicable CBA.

(2012 Memorandum, Ex. D to City's Mot. to Dismiss (emphases added).) Plaintiffs have submitted affidavits from TPD officers stating that the 2012 Memorandum was a significant alteration of past practices:

>During my tenure with TPD it has always been a known fact and expectation, based on the [City Personnel Policies], that officers successfully completing the corporal

>and sergeant examination would be promoted according to their placement on the applicable promotion list. It was also known that vacancies open (or known to become open) would be filled in rank order from the applicable promotion list. In other words, and as an example, if there were six openings for sergeant on July 1st, those completing the sergeants examination and ranking in the top 6 positions on July 2nd, would be promoted to sergeant.

(*See, e.g.*, Miller Aff., Ex. D. to Pls.' Resp. to City's Mot. to Dismiss.)

On October 23, 2012, TPD published the rankings of the individuals who took the 2012 sergeant examination ("2012 List"). Harker and Hart ranked fourth and fifth, respectively, on the 2012 List. However, in accordance with the terms of the 2012 Memorandum, the City filled the five sergeant vacancies that existed "as of" April 12, 2012 (due to the retroactive filling of higher-level vacancies) from the 2011 List. Because fourteen positions had already been filled from that list, the individuals promoted to sergeant in October 2012 ranked fifteenth through twentieth on the 2011 List. Thus, Harker and Hart were not promoted at that time.

Plaintiffs and six other officers submitted a "Promotional Grievance" via interoffice memorandum to the Chief of Police dated October 31, 2012 ("Grievance"). According to the Grievance, it was submitted pursuant to Section 7.4 of the CBA. (*See* Grievance, Ex. I to Pls.' Resp. to City's Mot. to Dismiss.)[3] In the Grievance, the officers took issue with the shortened duration of the 2012 List, asserting that the 2012 List should not be deemed effective for any months prior to its actual existence in October 2012. (*See id.* ("How we can [sic] be considered on a list that was not published until six months later?".)) The officers also challenged the sergeant promotions made from the 2011 List: "'Past practices' have been that when a list expired, it was no longer valid, and

---

[3] Section 7.4 provides that a "grievance which involves a promotional issue shall be filed in writing with the Chief of Police within ten (10) calendar days after the Employee becomes aware, or reasonably should have become aware of the event giving rise to the grievance." (CBA, Ex. C to City's Mot. to Dismiss.)

7

no more promotions could be made from this list. However, five additional Sergeants' [sic] were promoted on October 30, 2012 from this list." (*Id.*) In the conclusion, the officers stated: "The relief we request is that our eligibility list [2012 List] remain in effect until September 30, 2013." (*Id.*)

On November 14, 2012, the FOP responded in writing to the Grievance ("FOP Response"). First, the FOP concluded that the Grievance was untimely. (*See* Ex. F to City's Mot. to Dismiss (explaining that if the Grievance "was intended as a contractual grievance, it needed to be filed by October 27, 2012 with the Board of Directors" and that if the FOP decided to "pursue this matter, the City would no doubt raise" untimeliness as a defense).) The FOP nonetheless "took the liberty of addressing it, even though the matter was not timely or properly filed as a grievance." (*Id.*) The FOP addressed the officers' substantive concerns by stating: (1) the terms of the 2012 Memorandum provide that the 2012 List was deemed effective from April 13, 2013 through March 31, 2012, such that the 2012 List was not of a shortened duration; (2) the FOP membership was aware of the 2012 Memorandum for several months prior to the October 17, 2012 meeting, at which it was approved by FOP membership; (3) past practices are not relevant when there is a written agreement between the City and the FOP resolving the issue; (4) the FOP did not believe the City had breached any agreement and would not file a grievance on behalf of the officers; and (5) the FOP negotiated with the City on how to handle these promotions, and the negotiation resulted in a fair result. (*Id.*)

On April 19, 2013, Plaintiffs sought a restraining order against the City prohibiting it from offering the sergeant's promotion exam on April 24, 2013. *Pat Harker and Jerrod Hart v. City of Tulsa,* Tulsa County District Court Case No. CV-2013-491. On April 24, 2013, the City offered another sergeant's promotion exam and published a new eligibility list ("2013 List"). Harker and

Hart ranked first and third, respectively, on the 2013 List. On May 24, 2013, Tulsa County District Judge Carlos Chappelle denied Plaintiffs' motion for restraining order on grounds that Plaintiffs: (1) failed to show a vested right that was being threatened; (2) failed to show irreparable harm; (3) failed to show a substantial likelihood of success on the merits; (4) failed to show public policy favored granting the injunction; and (5) may lack standing and may not have named all necessary parties. (Order and Judgment on Temporary Injunction Request, Ex. H to City's Mot. to Dismiss.) Because the restraining order was the only relief requested, Judge Chappelle entered judgment in favor of the City and terminated the case.

On October 4, 2013, Plaintiffs filed this action in Tulsa County District Court, this time naming both the City and the FOP as Defendants. Construing the Complaint liberally and in accordance with arguments made by Plaintiffs in their briefs, Plaintiffs assert two claims against the City. First, they allege violation of Plaintiffs' rights to procedural due process protected by the Fourteenth Amendment of the U.S. Constitution ("Procedural Due Process Claim").[4] Plaintiffs contend that they "had a property interest in their promotion to Sergeant when they were passed over and not promoted to Sergeant following the publication of the 2012 Eligibility List, in favor of individuals from the 2011 Eligibility List" and that they "were denied due process . . . when they were passed over for promotion." (Compl. ¶ 44.) Second, Plaintiffs allege that the City breached Section 119.431 of the City Personnel Policies by promoting candidates from the expired 2011 List ("Breach of Contract Claim"). Against the FOP, Plaintiffs assert a claim entitled "Failure to

---

[4] Plaintiffs failed to respond to the City's arguments regarding the Oklahoma Constitution, and the Court deems the Procedural Due Process Claim as arising solely under the U.S. Constitution.

Represent," which alleges that the FOP failed to represent their interests when it declined to file a grievance on their behalf.

On November 12, 2013, Defendants removed the action to this Court. On November 27, 2013, the City filed the currently pending motion to dismiss and alternative motion for judgment, which is fully briefed. On February 24, 2014, Plaintiffs filed a Motion for Restraining Order, requesting that this Court enjoin the City from offering a sergeant's examination scheduled for April 9, 2014. Plaintiffs essentially argue that, due to past violations of their rights and because they still have not been promoted to sergeant from either the 2012 or 2013 List, no further promotional exams should be given.

## II.     Summary Judgment Standard

The City moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative for summary judgment pursuant to Rule 56. Plaintiffs responded by submitting their own evidence outside the pleadings. No party has requested additional discovery or objected to the Court's consideration of the motion as one for judgment. Therefore, the Court shall consider the motion as one for summary judgment pursuant to Rule 56 and shall consider all evidence presented by both parties.

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint

but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### III.     Validity of 2012 Memorandum

Plaintiffs challenge the validity of the 2012 Memorandum, arguing that it does not comply with a provision of the City of Tulsa Charter ("Charter"). Plaintiffs contend that the "proper approvals and authority were not secured by the Mayor before executing the [2012 Memorandum]" and that it is therefore "without affect and must be considered *void ab initio*." (Pls.' Resp. to Mot. to Dismiss 17.) The relevant portion of the Charter provides:

> The Civil Service Commission shall adopt rules and regulations governing the merit system which shall be submitted to the Council for approval or disapproval. The personnel rules and regulations shall become effective upon approval by the Council, of if the Council fails to act, the rules and regulations shall become effective twenty-one (21) days after the date of submission to the Council. The personnel rules and regulations shall be made available to any employee upon request. The personnel rules and regulations shall particularly provide for:
> . . .
> > B. The qualifications, standards, and procedures for entrance and promotion procedures, and methods of certification of eligibility to the appointing authority;
> > C. The preparation of reemployment, promotion and seniority lists;
> > D. Transfers, promotions, demotions, and dismissals;
> . . .

(Charter, Ex. A to Pls. Resp. to City's Mot. to Dismiss, at Art. X, § 3.) Because the validity of the 2012 Memorandum impacts Plaintiffs' claims against the City, the Court will decide this as a threshold matter.

The Court concludes that the Charter did not require the Civil Service Commission to adopt, and/or the City Council to approve, the changes to the sergeant testing schedule effected by the 2012

Memorandum. As set forth in the affidavit of City Manager Jim Twombly, the Civil Service Commission has adopted the City Personnel Policies. (Twombly Aff., Ex. J to City's Reply in Support of Mot. to Dismiss, at ¶ 6.) These policies, and each revision thereto, have been approved by the Tulsa City Council in accordance with the Charter. (*Id.*) One such approved provision is Section 119.31, which expressly permits the City and the FOP to "agree to a different schedule" for the sergeant examination. (City Personnel Policies, Ex. E to City's Mot. to Dismiss, at § 119.31.) Therefore, the Civil Service Commission and the City Council have adopted and approved a personnel policy that expressly contemplates alterations to the testing schedule, so long as such alterations are agreed to by the City and the FOP. That is precisely what occurred in the 2012 Memorandum, and the Charter does not invalidate such agreement in any way.

Plaintiffs' "voidness" argument was based solely on non-compliance with the Charter. However, Plaintiffs have presented at least some evidence that the FOP did not obtain approval of its members prior to entering the 2012 Memorandum. Specifically, Plaintiffs have presented the affidavit of Daniel Miller, who stated that the proposed agreement was not put before the members in attendance for a vote of approval or rejection. (Miller Aff., Ex. B. to Pls.' Resp. to Mot. to Dismiss.) The City has presented the FOP's Response, which states that the 2012 Memorandum was read and approved at the October 17, 2012 meeting. Out of an abundance of caution, the Court will address the issue of whether lack of approval by FOP members, if proven by Plaintiffs, would prevent the City from enforcing the agreement in this case.

Under the terms of the CBA, the City is not empowered to negotiate with any individual officers and may only negotiate with the FOP. (*See* CBA, Ex. C to City's Mot. to Dismiss, at § 1.1, 1.3.) TPD officers have granted the FOP the right to act as their exclusive bargaining agent and

have manifested their intent to be bound by the FOP's negotiations with the City. Based on this relationship, the Court concludes that the FOP possessed, at a minimum, apparent authority to enter into the 2012 Memorandum and create a binding agreement on behalf of FOP members. *See Garrison v. Bechtel Corp.*, 889 P.2d 273, 283 n. 27 (Okla. 1995) (explaining that "apparent authority results from manifestations by the principal to a third person that another is the principal's agent"); *Home Owners' Loan Corp. v. Thornburgh*, 106 P.2d 511, 512 (Okla. 1940) ("If liability of the principal is predicated upon apparent authority in excess of actual authority, the principles of estoppel necessarily come into play, and those principles in turn bring into importance the knowledge or duty of the person who invokes them, namely, the third person who is relying thereon."); *Serv. Emps. Int'l Union, Local 509 v. Labor Relations Comm'n*, 571 N.E. 2d 18, 23 (Mass. 1991) ("We accept as valid the commission's conclusion that, in the absence of circumstances that make the assumption unreasonable, an employer has the right to assume that the principal officer of a union . . . has authority to act on behalf of that union . . . to bind it to agreements he makes."); 12 *Williston on Contracts*, § 35:11 (4th ed.) ("An agent has the power to make contracts that are binding on a principal not only when the agent has actual authority, express or implied, but also when the principal, though not intending to confer authority on the agent, nevertheless holds the agent out to the public, or to the party with whom the agent deals, as having the appearance of authority."). In this case, the FOP President, as exclusive bargaining agent, signed the 2012 Memorandum the day after a meeting of its members. The City reasonably relied upon the 2012 Memorandum, made its promotions in accordance with the agreement, and would suffer severe consequences were the Court to somehow unravel or invalidate the 2012 Memorandum in this

litigation. Therefore, even assuming the FOP did not obtain approval at the October 17, 2012 meeting, the City is legally entitled to enforce and rely upon the 2012 Memorandum in this case.

### IV.     Breach of Contract

Plaintiffs allege that the City breached Section 119.31 of the City Personnel Policies by promoting sergeants on a different schedule than the schedule set forth in this provision. However, Section 119.31 expressly contemplates changes to the schedule, if such changes are agreed to by the FOP and the City. (Ex. E. to City's Mot. to Dismiss, at § 119.31 ("*Unless the City and the [FOP] agree to a different schedule*, a promotional examination for the rank of Sergeant shall be given during the month of April every year . . . .") (emphasis added).) The 2012 Memorandum agreed to a different schedule, and the Court has ruled that the City may enforce such agreement. The City did not breach the City Personnel Policies and/or the CBA in any manner; instead, the City simply followed the amended procedures set forth in the 2012 Memorandum. Therefore, the City is entitled to judgment on Plaintiffs' Breach of Contract Claim.

### V.      Procedural Due Process

The Fourteenth Amendment protects citizens from the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision . . . ." *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir.1991). "To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). For reasons explained below, the City is entitled

to judgment based on Plaintiffs' inability to satisfy the first element, and the Court does not reach the second element.

The Court has concluded that the 2012 Memorandum was enforceable by the City. Having reached this conclusion, it becomes clear that Plaintiffs did not possess any vested property interest in their desired promotions. In order to have a property interest in a benefit such as a promotion, a person "clearly must have a legitimate claim of entitlement to it." *Burrell v. Okla. Dep't of Transp.*, Nos. 92-6304, 92-6315, 92-6320, 1994 WL 318685, at *1 (10th Cir. June 30, 1994). Plaintiffs allege that their rankings on the 2012 List entitled them to fill two vacancies that were instead filled by lower-ranking individuals on the 2011 List. However, in filling these disputed positions, the City followed the terms of the 2012 Memorandum. (*See* 2012 Memorandum, Ex. D to City's Mot. to Dismiss, at § 2(a) ("The five vacancies in this rank that existed as of 11:59 p.m. April 12, 2012 and [sic] shall be filled from the last promotional eligibility list that expired April 12, 2012."). Any "entitlement" potentially created by Plaintiffs' rankings on the 2012 List was extinguished by the clear terms of the 2012 Memorandum. Therefore, Plaintiffs did not have any "legitimate claim of entitlement" to the promotions given to other officers in October 2012.

Plaintiffs have attempted to create certain questions of fact based upon the City's past practices and other circumstances. However, any questions of fact related to past practices are not relevant in light of the express terms of the 2012 Memorandum. Nor is it relevant that the 2012 testing had already taken place when the 2012 Memorandum was entered into by the FOP and the City. Nor is it relevant that Plaintiffs have not received promotions to date despite their high rankings on the both the 2012 and 2013 Lists. These are all unfortunate circumstances for Plaintiffs, but the City simply acted in accordance with the deal reached with the FOP. The City cannot be said

to have violated Plaintiffs' procedural due process rights by bargaining with the FOP, reaching an agreement, and making promotions in compliance with that agreement. Therefore, the City is entitled to judgment on Plaintiffs' Procedural Due Process Claim.

## VI. Conclusion

The City's Motion for Summary Judgment (Doc. 8) is GRANTED, and the City is dismissed as a party to the litigation. The City's Motion to Dismiss (Doc. 6) is DENIED as moot. Plaintiffs' Motion for Restraining Order (Doc. 15) seeking to enjoin the City's conduct is DENIED based on the City's entitlement to judgment as a matter of law.

Plaintiffs have also asserted a claim against the FOP. The FOP has not filed an answer or otherwise responded to the Complaint, and it is unclear whether the FOP has been served with process. Plaintiffs are ordered to file a status report regarding their remaining claim against the FOP no later than five days from entry of this Order.

**SO ORDERED** this 1st day of April 2014.

*Terence Kern*
**TERENCE KERN**
**United States District Judge**